Kenneth M. COFFLAND, Appellant,

v.

Susan J. COFFLAND, Appellee.

No. S–8976.

Supreme Court of Alaska.

June 30, 2000.

Colleen A. Kosluchar, Niewohner & Associates, P.C., Fairbanks, for Appellant.

Elizabeth A. Ziegler, Baxter, Bruce, Brand & Douglas, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## O P I N I O N

FABE, Justice.

## I. *INTRODUCTION*

Ken Coffland appeals the trial court's distribution of marital property in his divorce case. He argues that discovery sanctions imposed by the court precluded him from proving that certain promissory notes existed and were marital debts. Although the superior court's discovery sanctions were appro-

priate, we conclude that the trial court erred in not considering two of the debts, which Susan Coffland admitted were incurred during the marriage.

## II. *FACTS AND PROCEEDINGS*

Susan and Kenneth Coffland married on April 6, 1983 in Kodiak. Their daughter, Megan, was born in August of 1985. The parties separated on October 31, 1996, and Susan filed for divorce on January 20, 1998.

In 1993 the Cofflands and another couple formed a corporation, purchased a Subway franchise, and opened a store in Ketchikan. At the time of the divorce, the Cofflands agreed that they had eighty percent of the equity in the franchise. The parties dispute, however, whether debts incurred while attempting to expand the business were marital.

In 1994 the parties investigated a possible purchase of two more Subway restaurants located in Juneau. While exploring this possibility, Ken asserts that they incurred debt in the form of promissory notes. Ken claims that he signed a total of five promissory notes amounting to the aggregate sum of $35,000. Susan signed two of these notes, each for $10,000.

At the time of separation, Susan lived in Sitka with Megan. She worked both as a full-time emergency medical technician at the Sitka Fire Department and a part-time nurse at Sitka General Hospital. Ken, who had retired from the Coast Guard in 1991, managed the parties' Subway restaurant in Ketchikan and occasionally taught survival classes.

During discovery Susan had a difficult time gathering information about how to value the Subway venture. She requested information about debts incurred in relation to the Subway business in her interrogatories, requests for admission, and requests for production. But Ken was uncooperative and did not respond with any information about these debts until the day of trial.

On April 22, 1998, the court issued a pretrial order, setting the close of discovery for June 10, 1998 and trial for August 10, 1998. In this order the trial court warned that a

failure to comply could result in the exclusion of witnesses, exclusion of evidence, sanctions or other penalties prescribed by the rules of civil procedure.

But Ken's failure to participate in the discovery process persisted. In May, Susan sent Ken a second set of interrogatories and requests for production of documents relating to Ken's income. Although Ken eventually provided some corporate tax returns, Ken never answered any of the interrogatories served upon him by Susan. Furthermore, he did not file his preliminary witness list when it was due on May 1. When Susan filed a motion on May 15, requesting the court to order Ken to file the list, Ken did not respond. Ken's supplemental witness list was due on May 18, and when that day passed, Susan again moved for a court order requiring Ken to file the list. Again, Ken failed to respond. Susan filed a motion to compel discovery responses on May 19; Ken never responded to that motion.

On June 4 the court ordered Ken to provide "full and complete discovery responses" to Susan by June 12, 1998 and awarded Susan her actual attorney's fees on her motion to compel. The court also ordered Ken to file his preliminary and supplemental witness lists. Although Ken eventually filed his witness list on July 2, he failed to comply with the order to compel and did not pay the court's fee award.

On June 26 Susan's counsel spoke with Ken, and Ken agreed to send corporate tax returns for the years 1993 to 1997. Ken insists that he told Susan's counsel that she could inspect the records in Ketchikan, but Susan's counsel disputes this assertion. Ken also concedes that he had not cooperated in the discovery process.

Pursuant to Alaska Rule of Civil Procedure 37, Susan filed a motion to impose sanctions against Ken for his failure to provide court-ordered discovery. At a July 17 hearing, which Ken did not attend, the court addressed the pending sanctions motion. The court did not enter a default against Ken.

The court held a pretrial conference on August 3, but Ken did not participate. Susan's counsel informed the court that Ken had provided no documents other than the corporate tax returns for years 1993 to 1997. The court again considered the Rule 37 sanctions motion but did not issue an establishment or preclusion order. Instead, the trial court ruled that "because Mr. Coffland has not [complied] in any respect with the pretrial order, the only evidence that he'll be allowed to present are any documents that he's previously disclosed to [Susan,] and of course his own testimony."

Trial commenced on August 11, 1998 in Sitka. Ken appeared and attempted to file a pretrial brief and three proposed property distribution tables. He did not file an exhibit list or any exhibits. The court rejected the brief and property distribution tables because they were untimely. The court explained to Ken that, because of his failure to cooperate in discovery, his presentation would be limited to his own testimony and documents previously disclosed to Susan. In his opening statement, Ken explained that he did not have the money to hire an attorney and that his business commitments prevented him from complying with the discovery requests.

In her proposed property distribution table, Susan listed two $10,000 promissory notes, but characterized them as Ken's separate debts. Yet the record on appeal reveals that Susan actually signed these two particular notes. And Susan testified that the promissory notes of which she was aware were "business related."

At trial Ken attempted to testify about the promissory notes, but Susan's counsel objected. The trial court sustained the objection because this testimony could not be substantiated by the materials which Ken had disclosed to Susan. Ken also attempted to mention the notes in his closing argument, but Susan's counsel again objected. In its decision, the court found that Ken failed to prove the existence of the debts. Consequently, the court valued the Subway franchise without deducting the amount owed on the promissory notes.

Ken appeals the trial court's decision to impose sanctions, which prevented him from presenting evidence of these debts at trial,

the classification of these debts as non-marital, and the valuation of the Subway franchise.

## III. STANDARD OF REVIEW

 This court reviews a trial court's imposition of Rule 37(b) sanctions for failure to comply with a discovery order for an abuse of discretion.[1] This court reviews a trial court's factual findings under the clearly erroneous standard.[2]

## IV. DISCUSSION

### A. The Trial Court's Sanction Was Appropriate.

The trial court limited the evidence that Ken could present at trial to his own testimony and any documentation previously disclosed to Susan. In doing so, the trial court did not issue a preclusion order, but rather prohibited Ken from "introducing designated matters into evidence."[3] Because this ruling qualifies as a sanction under Rule 37(b)(2)(B), the civil rules required the trial judge to consider the appropriateness of the sanction before entering the order.[4] Here, the trial judge crafted an appropriate and narrowly tailored sanction that penalized Ken for his failure to participate in the discovery process but did not constitute "mere punishment."[5]

Ken's actions justified a discovery sanction. Susan made repeated discovery requests, all of which Ken ignored. In doing so, she asked specifically for information on marital debts. Interrogatory 9 stated:

With regard to marital debts, identify each and every creditor to whom you, individually and/or through any business entity, the plaintiff, or both of you and your spouse owe any monies equal to or exceeding the sum of $100.00; the address and phone number of said creditor, the amount owing, any collateral, reason debt was incurred, and who should pay for it.

In Susan's requests for production, served contemporaneously with the complaint, she asked Ken to

produce copies of all debt instruments, loan instruments, mortgage instruments, executed or incurred by plaintiff, or by you, since January 1, 1993, to present, whether held individually, jointly with another, in the name of a business, or as surety for another.

Despite these direct demands, Ken did not produce the requested information until the day of trial and never answered Susan's interrogatories.

The trial judge entered the sanctions only after Ken had demonstrated an unwillingness to cooperate. Ken failed to respond to motions, failed to file documents with the court in a timely manner, and failed to appear at pretrial proceedings. Susan filed a motion to compel discovery, but Ken did not comply with the motion. When the court ordered Ken to provide "full and complete discovery responses" and awarded Susan her actual attorney's fees, Ken ignored the order and did not pay the fee award. The court considered the Rule 37 motion only after Ken's repeated refusals to cooperate with Susan or the court. Moreover, the trial court afforded

---

1. See *Underwriters at Lloyd's London v. The Narrows*, 846 P.2d 118, 119 (Alaska 1993).

2. See *Jones v. Jones*, 942 P.2d 1133, 1136 (Alaska 1997).

3. Alaska R. Civ. P. 37(b)(2)(B).

4. Alaska R. Civ. P. 37(b)(3) states:
 *Standard for Imposition of Sanctions.* Prior to making an order under sections (A), (B), or (C) of subparagraph (b)(2) the court shall consider (A) the nature of the violation, including the willfulness of the conduct and the materiality of the information that the party failed to disclose;
 (B) the prejudice to the opposing party;
 (C) the relationship between the information the party failed to disclose and the proposed sanction;
 (D) whether a lesser sanction would adequately protect the opposing party and deter other discovery violations; and
 (E) other factors deemed appropriate by the court or required by law.
 The court shall not make an order that has the effect of establishing or dismissing a claim or defense or determining a central issue in the litigation unless the court finds that the party acted willfully.

5. *Honda Motor Co., Ltd. v. Salzman*, 751 P.2d 489, 493 (Alaska 1988) (citations omitted).

Ken ample opportunity to provide the requested information.

■ Ken contends that his failure to comply with the discovery order can be explained by his pro se status and the fact that he was too busy running the Subway business and teaching survival classes. But while "a trial judge has an obligation to 'inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish,'"[6] in this case Ken made no effort to cooperate with the trial court or to request assistance in complying with its orders. A pro se litigant must make some attempt to comply with the court's procedures before receiving the benefit of the court's leniency.[7] Moreover, the pretrial order put Ken on notice that a failure to cooperate in discovery could result in sanctions.

■ Ken also suggests that the trial court's sanction amounted to an establishment or preclusion order. Ken argues that this order was too broad and constituted impermissible punishment because "the established issue must be an . . . 'element of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce.'"[8] But we disagree with Ken's contention that the trial court's sanction established any facts or resolved any issues before the court. The sanction merely limited the evidence that Ken could present to the information that he had previously provided to Susan. Other evidence of the promissory notes, including Susan's property table, was presented at trial. We conclude that the trial court struck an appropriate balance between sanctioning recalcitrant discovery behavior and allowing Ken the opportunity to present his case.

■ Ken also argues that Susan should have undertaken other efforts to secure the financial information she needed, including taking Ken's deposition or exercising her rights as a shareholder in the Subway franchise to inspect the corporate documents. But we do not require a complying party to devise creative ways to obtain information that the noncomplying party controls and refuses to produce. Accordingly, we conclude that the sanction was appropriate.

### B. Susan Conceded the Existence of Two Business–Related Promissory Notes.

■ In this case it was error to conclude that the two promissory notes signed by Susan did not exist. Susan admitted the existence of these debts and their amounts in her property table. Susan also testified that she knew of the debts. As noted above, Susan signed the two notes that she included in her property table. In light of this evidence, it was clearly erroneous to conclude that Ken failed to prove the existence of these two debts.

■ Moreover, the court should have presumed that the two notes signed by Susan were marital debts. We presume that property acquired during the marriage is marital.[9] Susan testified that the notes were business related and the business was marital property. And we acknowledge that debts may be an important factor in valuing the marital estate.[10] Absent any showing that the parties intended a debt to be separate, the trial court must presume that a debt incurred during the marriage is marital

---

**6.** *Keating v. Traynor,* 833 P.2d 695, 696 (Alaska 1992) (quoting *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987)).

**7.** *See Wright v. Black,* 856 P.2d 477, 480 (Alaska 1993).

**8.** *Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 122 (Alaska 1993) (quoting *Honda Motor,* 751 P.2d at 493).

**9.** *See Johns v. Johns,* 945 P.2d 1222, 1225 (Alaska 1997) ("With a few exceptions, all assets acquired by the parties during their marriage are

marital property."); *Jones v. Jones,* 942 P.2d 1133, 1136 (Alaska 1997); *see also McGee v. McGee,* 974 P.2d 983, 988–89 (Alaska 1999).

**10.** *See McDaniel v. McDaniel,* 829 P.2d 303, 308 (Alaska 1992) ("As a general rule Alaska courts consider marital debt in valuing the marital estate."); *see also Jones,* 942 P.2d at 1137 ("Doctor's fees, incurred during the marriage, are marital debts which must be included in the marital estate and divided like any other marital property.").

**322**

and should consider it when dividing the marital estate.

▮ Although we conclude that it was error to find that there was insufficient evidence to prove the existence of the two promissory notes signed by Susan, it was not error for the court to find that Ken had not shown sufficient evidence to prove the existence of the other promissory notes. Ken presented no documentary evidence of the other promissory notes, and the trial court observed that "Mr. Coffland inappropriately and somewhat irritatingly just asked us to accept his word without any backup, and that I'm not willing to do." We have commented that with respect to the valuation of marital assets, "[i]t is the duty of the parties, not the court, to ensure that all necessary evidence is presented at trial." [11] Because Ken made accurate valuation of the Subway store almost impossible, it was not clearly erroneous for the trial court, in the absence of concrete evidence of the debts, to exclude them in its valuation of the Subway business.

## V. CONCLUSION

Although the trial court properly exercised its discretion to sanction Ken for his failure to comply with the motion to compel discovery, it was error to fail to consider the two debts that Susan included in her property table and admitted were incurred during the marriage. We therefore AFFIRM in part and REMAND to the trial court to redetermine the allocation of marital property, taking into account the two promissory notes signed by Susan.

**11.** *Zimin v. Zimin,* 837 P.2d 118, 122 (Alaska 1992).